## ESTADO LIBRE ASOCIADO DE PUERTO RICO
## EN EL TRIBUNAL DE APELACIONES
## PANEL ESPECIAL

| | | |
|---|---|---|
| BANCO DE DESARROLLO ECONÓMICO PARA PUERTO RICO<br><br>Peticionaria<br><br>vs.<br><br>GARNET CAPITAL ADVISORS LLC Y OTROS<br><br>Recurridos | **KLCE202400916** | *CERTIORARI* procedente del Tribunal de Primera Instancia, Sala Superior de San Juan<br><br>Caso Núm.: SJ2019CV11697<br><br>Sobre: Acción de Nulidad Contractual |

Panel integrado por su presidente, el Juez Bonilla Ortiz, la Jueza Álvarez Esnard y la Jueza Martínez Cordero[1] .

Bonilla Ortiz, Juez Ponente

### RESOLUCIÓN

En San Juan, Puerto Rico a 7 de noviembre de 2024.

Comparece ante este foro R&D Master Enterprises, Inc. (R&D Master), Pro Pave Corp., Matrix Transport, Inc., la Sra. María Magdalena Díaz Vila, el Sr. José Rovira González y la sociedad legal de gananciales compuesta por ambos ("la parte peticionaria"), y nos solicitan que revisemos una *Resolución*, emitida por el Tribunal de Primera Instancia, Sala Superior de San Juan, notificada el 22 de julio de 2024. Mediante esta, el foro primario declaró *No Ha Lugar* a la *Urgente Moción de Intervención, como Cuestión de Derecho Bajo la Regla 21.1 de las Reglas de Procedimiento Civil de Puerto Rico.* En consecuencia, ordenó a R&D Master y su abogado, el Lcdo. Lamoutte Navas (licenciado Lamoutte), a pagar los honorarios de abogado que Garnet Capital Advisors LLC (Garnet), PR Recovery and Development REO LLC, PR

---

[1] Véase Orden Administrativa OATA-2023-001 del 9 de enero de 2023, en la que se asigna el presente recurso a la Hon. Beatriz M. Martínez Cordero en sustitución de la Hon. Olga E. Birriel Cardona.

Recovery and Development JV LLC (PR Recovery) y Parliament Capital Management LLC (Parliament), ("la parte recurrida"), incurrieron al oponerse a la solicitud de intervención.

Por los fundamentos que se exponen a continuación, **DENEGAMOS** el recurso de *Certiorari* de epígrafe.

## I.

El 7 de noviembre de 2019, el Banco de Desarrollo Económico (Banco) presentó una *Demanda* sobre sentencia declaratoria, nulidad de contrato, restitución de prestación y daños en contra de Garnet, PR Recovery y Parliament.

Tras varios trámites procesales los cuales no son necesarios pormenorizar, el 20 de mayo de 2024, la parte peticionaria presentó una *Urgente Moción de Intervención, como Cuestión de Derecho Bajo la Regla 21.1 de las Reglas de Procedimiento Civil de Puerto Rico*.[2] En esencia, adujo que era deudor del *Loan Sale Agreement*, el cual fue cedido por el Banco a PR Recovery. Sostuvo que sus derechos podían verse afectados por la determinación que tomara el Tribunal sobre la validez de dicha cesión. De igual forma, señaló que en el pleito civil *R&D Master Enterprises, y otros v. Banco de Desarrollo Económico para Puerto Rico y otros*, alfanumérico SJ2020CV04491, el foro primario determinó que la determinación sobre validez o nulidad de la cesión del *Loan Sale Agreement* le correspondía a la Junta de Supervisión Fiscal (Junta), quien no era parte en dicho pleito, ni en el pleito de epígrafe.

---

[2] *Urgente Moción de Intervención, como Cuestión de Derecho Bajo la Regla 21.1 de las Reglas de Procedimiento Civil de Puerto Rico*, Anejo II, págs. 15-18 del apéndice del recurso.

Por todo lo anterior, solicitó que autorizara su intervención, toda vez que se verían afectados por la disposición final del pleito. Asimismo, solicitó se declarara la nulidad del *Loan Sale Agreement*, ya que la Junta no había completado su proceso administrativo de revisar y aprobar el *Loan Sale Agreement*, conforme a la política de revisión de contratos.

En desacuerdo, el 10 de junio de 2024, PR Recovery, presentó su *Oposición de Recovery a la Quinta y Sexta Moción de Intervención Presentadas por el Licenciado Lamoutte.*[3] Planteó que, era la sexta ocasión que la parte peticionaria solicitaba interferir en los procedimientos del caso. Resaltó, que los intentos por intervenir habían sido declarados sin lugar. A su vez, argumentó que la parte peticionaria incumplió con la Regla 21.4 de Procedimiento Civil, 32 LPRA Ap. V, R.21.4, toda vez que no expuso las razonas que justificaban su intervención. Tampoco incluyeron las alegaciones en las que fundamentaban su intervención.

De otra parte, esbozó que la parte peticionaria no era parte del contrato, por lo que no tenían legitimación para solicitar su nulidad. Enfatizó que, el resultado de este pleito no iba a afectar los términos de sus deudas, ni tendría efecto sobre su obligación de repago. Por tanto, razonó que, si el Banco era el acreedor legítimo, le correspondería a PR Recovery remitirle al Banco los pagos recibidos por la parte peticionaria.

A su vez, alegó que los presuntos interventores no tenían legitimación activa para reclamar la nulidad del *Loan Sale Agreement* entre el Bando y PR Recovery, porque

---

[3] *Oposición de Recovery a la Quinta y Sexta Moción de Intervención Presentadas por el Licenciado Lamoutte*, Anejo III, págs. 19-38 del apéndice del recurso.

los créditos podían ser cedidos sin el consentimiento del deudor. Además, arguyó que la parte peticionaria no podía establecer que iban a sufrir un daño a causa de la cesión del *Loan Sale Agreement*. Por último, expuso que los argumentos de la parte peticionaria estaban dirigidos a reclamar remedios en contra de la Junta. Por todo lo anterior, solicitó que le impusieran sanciones a la parte peticionaria y al licenciado Lamoutte, toda vez que, continuaban insistiendo en solicitar un remedio al que no tenían derecho y, que este Tribunal le negó en múltiples ocasiones. Enfatizó que, la parte peticionaria provocó que incurriese en gastos innecesarios para oponerse a mociones que eran frívolas y que tenían el propósito de hostigar y causar inconvenientes a las partes y al Tribunal.

En la misma fecha, a saber, el 10 junio de 2024, Garnet presentó su *Oposición de Garnet a Soicitudes de Intervención* en la cual reiteró los planteamientos de la moción en *Oposición de Recovery a la Quinta y Sexta Moción de Intervención Presentadas por el Licenciado Lamoutte* que presentó PR Recovery and Development, REO, LLC y PR Recovery and Development, JV, LLC.[4] Añadió, que las alegaciones sin fundamento de la solicitud de intervención reflejaban un claro menosprecio por las órdenes del Tribunal. Así pues, solicitó la imposición de honorarios a R&D Master y el licenciado Lamoutte.

Por último, el 10 de junio de 2024, Parliament presentó su *Oposición de Parliament a Solicitud de Intervención* en la cual acogió los planteamientos de las

---

[4] *Oposición de Garnet a Soicitudes de Intervención*, Anejo IV, págs. 39-44 del apéndice del recurso.

mociones presentadas por PR Recovery y Garnet.[5]   En virtud de lo anterior, solicitó la imposición de sanciones por una suma no menor de $10,000.00 a la parte peticionaria y su abogado.[6]

Evaluadas las mociones y argumentos de las partes, el 22 de julio de 2024, el foro primario notificó la *Resolución* recurrida en la cual declaró *No Ha Lugar* a la solicitud de intervención que presentó la parte peticionaria.[7]  En esencia, el foro primario determinó que los presuntos interventores incumplieron con la Regla 21.4 de Procedimiento Civil, 32 LPRA Ap. V, R. 21.4, ya que no incluyeron las alegaciones en que se fundamentaban sus reclamos.  Por tanto, resolvió que no estaba en posición de evaluar dicha solicitud y permitir la intervención.  De igual forma, concluyó que los presuntos interventores no eran partes del *Loan Sale Agreement*, por lo que no tenían legitimación activa en el pleito.  Particularmente, enfatizó que los derechos, ni obligaciones de repagar sus deudas se verían afectadas por la cesión de los préstamos a PR Recovery.

De otra parte, el foro primario enfatizó que era la séptima (7) ocasión que el licenciado Lamoutte había solicitado intervención en el pleito. Sin embargo, explicó que este continuó presentando mociones por los mismos argumentos que ya habían sido rechazados en múltiples ocasiones.  Ello, forzando a las otras partes a presentar sus oposiciones.  Asimismo, resaltó

---

[5] *Oposición de Parliament a Solicitud de Intervención,* Anejo V, págs. 45-46 del apéndice del recurso.
[6] *Breve Réplica a las Mociones de Oposición Radicadas por RR Recovery and Development JV, LLC, Garnet Capital Advisors LLC, y Parliament Capital Managment, LLC el Día 10 de Junio de 2024, Entradas Núms. 393,394 y 395 (SUMAC)*, Anejo VIII, págs. 51-56 del apéndice del recurso. El 11 de julio de 2024, la parte peticionaria presentó su *Breve Réplica a las Mociones de Oposición Radicadas por RR Recovery, Garnet y Parliament*.
[7] *Resolución*, Anejo I, págs. 1-14 del apéndice del recurso.

que dicha conducta obligó al Tribunal a dedicarle tiempo y recursos a evaluar los mismos planteamientos en varias ocasiones. En virtud de lo anterior, el foro primario concluyó que R&D Master y su abogado presentaron las mociones de intervención a sabiendas de que los hechos y el derecho aplicable eran claros. Por tal razón, resolvió que estos actuaron con temeridad y debían responder solidariamente por los honorarios en que incurrió la parte recurrida al tener que responder a sus múltiples solicitudes de intervención. Cónsono con lo anterior, el foro primario otorgó a la parte recurrida el término de diez (10) días para presentar un memorando de costas y honorarios incurridos en las oposiciones a las solicitudes de intervención.

Inconforme, el 29 de julio de 2024, la parte peticionaria presentó su *Moción de Reconsideración de la Resolución Expedida por el Honorable Tribunal el Día 22 de julio de 2024, Entrada Núm. 403 SUMAC*.[8] En síntesis, adujo que la *Demanda* de epígrafe era de alto interés público, y su adjudicación tendría un efecto en pequeños y medianos empresarios que contrataron con el Banco. Asimismo, arguyó que el foro primario les mantenía en estado de indefensión ante un supuesto acreedor, cuya legitimación y madurez estaba siendo cuestionada en el pleito. Esbozó que, el foro primario era el único con jurisdicción y competencia para adjudicar la validez o la nulidad del *Loan Sale Agreement*, por lo que procedía admitir a la parte peticionaria. Por último, apuntó que tenían derecho a exigir que el Tribunal emitiera un

---

[8] *Moción de Reconsideración de la Resolución Expedida por el Honorable Tribunal el Día 22 de julio de 2024, Entrada Núm. 403 SUMAC*, Anejo IX, págs. 57-66 del apéndice del recurso.

pronunciamiento judicial respecto a la identidad del legítimo acreedor de los préstamos en controversia.

Posteriormente, el 13 de agosto de 2024, PR Recovery y Parliament presentaron su *Oposición de PR Recovery y Parliament a las Mociones de Reconsideración de R&D Master y el Lcdo. Lamoutte Navas* en la cual reiteraron sus planteamientos iniciales.[9] De igual forma, alegaron que la multiplicidad de mociones causó que los recurridos tuvieran que incurrir en gastos innecesarios al oponerse a dichas mociones, lo cual demostró un patrón de conducta dirigido a hostigar y causar inconvenientes. Además, apuntaron que los presuntos interventores se sometieron voluntariamente a la jurisdicción del Tribunal al presentar sus solicitudes de intervención buscando convertirse en partes y activaron el proceso judicial buscando remedios a su favor. Por tanto, razonaron que no ser partes en el pleito, no les eximía de ser sancionados. Por último, expresaron que nada impedía que el foro primario optase por permitir a las partes demostrar los honorarios incurridos y basar su determinación de la cuantía en números reales y no imponer una cifra arbitraria.

En la misma fecha, Garnet presentó su *Oposición de Garnet a Solicitudes de Reconsideración*.[10] En esencia, esgrimió que R&D Master carecía de legitimación activa para impugnar el *Loan Sale Agreement*. Asimismo, indicó que la decisión del Tribunal de sancionar a R&D Master y su abogado era correcta en derecho. Por último, sostuvo que la conducta del licenciado Lamoutte y R&D

---

[9] *Oposición de PR Recovery y Parliament a las Mociones de Reconsideración de R&D Master y el Lcdo. Lamoutte Navas*, Anejo XIII, págs. 77-85 del apéndice del recurso.
[10] *Oposición de Garnet a Solicitudes de Reconsideración,* Anejo XIV, págs. 86-89 del apéndice del recurso.

Master obligaron a las partes y al Tribunal a incurrir en trámites evitables, por lo que aumentaron los costos del litigio. Así pues, resaltó que el foro primario tenía plena discreción para imponer una cantidad razonable para el pago de honorarios de abogado.[11]

Examinados los argumentos presentados por las partes, el 19 de agosto de 2024, el foro primario notificó su *Resolución* en la cual determinó lo siguiente:

> Examinada la Moción de Reconsideración [403] y replica [414] presentada por los presuntos interventores, y las posturas en oposición presentadas por la parte demandada [414][415]; se dispone, No Ha Lugar la primera [403]. Se acogen los fundamentos presentados por la parte demandada, en consecuencia, los planteamientos y argumentos discutidos en la solicitud de reconsideración [403] y replica [416] no nos mueven a modificar, ni cambiar nuestro dictamen contenido en la Resolución [403] del 22 de julio de 2024 y notificada en esa misma fecha. Adviértase que una moción de reconsideración no es una nueva oportunidad para que la parte perdidosa reitere nuevamente los mismos argumentos que expuso antes de que se dictara sentencia y que no movieron el ánimo del tribunal para resolver a su favor. Tampoco procede cuando el promovente solo presenta nuevos argumentos o hechos que pudo presentar previamente, sin una justificación para no haberlo hecho antes. J. Cuevas Segarra, Tratado de Derecho Procesal Civil , Publicaciones JTS, San Juan, 2011, T. IV, pág. 1374. Asimismo, se aclara que la Resolución [403] contiene una orden concediendo termino a la parte demandada para presentar un memorando de costas y honorarios interlocutorios y luego en el ejercicio de la discreción amplia reconocida al tribunal se podrá evaluar la razonabilidad de los gastos y honorarios reclamados, Auto Servi, Inc. v. E.L.A. 142 DPR 321(1997).[12]

Aún inconforme, el 23 de agosto de 2024, la parte peticionaria acudió ante nosotros mediante un recurso de

---

[11] *Breve Réplica,* Anejo XV, págs. 89-91 del apéndice del recurso. El 15 de agosto de 2024, la parte peticionaria presentó una *Breve Réplica.*
[12] *Resolución*, Anejo XVI, págs. 92-93 del apéndice del recurso.

*Certiorari* levantando los siguientes señalamientos de error:

Erró el TPI al imponer honorarios por temeridad al amparo de la Regla 44.1(d) de las Reglas de Procedimiento Civil a unos potenciales interventores sobre los cuales el TPI no posee jurisdicción sobre la persona.

Erró el TPI al imponer honorarios por temeridad al amparo de la Regla 44.1 (d) de las Reglas de Procedimiento Civil a unas personas que solicitaron intervenir al pleito, cuya solicitud se denegó, y que no tuvo ningún impacto en el trámite del caso, ni causo dilación, ni la parte interventora incumplió con ninguna orden del Tribunal.

Erro el TPI al imponer honorarios por temeridad al amparo de la Regla 44.1 (d) de las Reglas de Procedimiento Civil mediante una Resolución que de su faz es ambigua y vaga.

Erró el TPI al imponer honorarios por temeridad al amparo de la Regla 44.1(d) de las Reglas de Procedimiento Civil a unos potenciales interventores que no causaron demora ni dilación en el caso mientras el mismo se encontraba paralizado por orden del propio Tribunal.

Erró el TPI al imponer honorarios por temeridad al amparo de la Regla 44.1(d) de las Reglas de Procedimiento Civil a unos potenciales interventores que nunca fueron admitidos como partes al pleito de nulidad.

Erró el TPI al abusar de su discreción y ser arbitraria, e imponer honorarios por temeridad al amparo de la Regla 44.1(d) de las Reglas de Procedimiento Civil a una parte que solicitó intervención, y contra la cual no se ha dictado sentencia alguna en su contra, dejando al arbitrio de las demás partes la cuantía a imponer mediante la solicitud de memorados por el TPI.

Erró el TPI al imponer honorarios por temeridad al amparo de la Regla 44.1(d) de las Reglas de Procedimiento Civil de cuantía aleatoria e indeterminada.

Erró el TPI al imponer honorarios por temeridad al amparo de la Regla 44.1(d) de las Reglas de Procedimiento Civil a unos potenciales interventores que no han incumplido ninguna orden u otra determinación interlocutoria del Tribunal.

Luego de una evaluación preliminar del expediente, el 27 de agosto de 2024, emitimos una *Resolución*, mediante la cual concedimos a la parte recurrida el término de quince (15) días para que presentara su postura. Conforme ordenado, el 9 de septiembre de 2024, la parte recurrida presentó su *Oposición a Petición de Certiorari*. Con el beneficio de la comparecencia de ambas partes, procedemos a disponer del asunto ante nuestra consideración.

**II.**

**-A-**

La Regla 52.1 de Procedimiento Civil, 32 LPRA Ap. V, R. 52.1, delimita las instancias en que el Tribunal de Apelaciones expedirá un recurso de *certiorari* para revisar resoluciones u órdenes interlocutorias dictadas por el Tribunal de Primera Instancia. Es decir, cuando "se recurra de una resolución u orden bajo las Reglas 56 y 57 o de la denegatoria de una moción de carácter dispositivo." Regla 52.1 de Procedimiento Civil, *supra*.

Asimismo, dispone los supuestos en que este foro intermedio podrá revisarlas, con carácter discrecional y a manera de excepción, en las siguientes instancias:

> [C]uando se recurra de decisiones sobre la admisibilidad de testigos de hechos o peritos esenciales, asuntos relativos a privilegios evidenciarios, anotaciones de rebeldía, en casos de relaciones de familia, en casos que revistan interés público o en cualquier otra situación en la cual esperar a la apelación constituiría un fracaso irremediable de la justicia.

Por su parte, la Regla 40 del Reglamento del Tribunal de Apelaciones, 4 LPRA Ap. XXII-B, R. 40, establece los criterios que este foro debe tomar en consideración al atender una solicitud de expedición de este recurso discrecional; a saber, si el remedio y la

disposición de la decisión recurrida, a diferencia de sus fundamentos, son contrarios a derecho. Así también, debemos tomar en consideración si ha mediado prejuicio, parcialidad o error craso y manifiesto en la apreciación de la prueba por parte del foro primario.

También examinaremos si el asunto planteado exige consideración más detenida a la luz de los autos originales o de alegatos más elaborados, o si la etapa del procedimiento en que se presenta el caso es la más propicia para su consideración. Finalmente, debemos analizar si la expedición del auto solicitado evita un fracaso de la justicia. *Véase*, Regla 40 del Reglamento del Tribunal de Apelaciones, *supra*.

### III.

Es preciso comenzar por destacar que la *Resolución* recurrida, a pesar de ser un dictamen interlocutorio, es susceptible de revisión por parte de este foro, en virtud de la Regla 52.1 de Procedimiento Civil, *supra*. En síntesis, la parte peticionaria argumenta que el Tribunal de Primera Instancia que erró al declarar *No Ha Lugar* la moción de intervención e imponerle honorarios por temeridad al amparo de la Regla 44.1(d) de las Reglas de Procedimiento Civil, 32 LPRA Ap. V, R. 44.1(d), a una potencial parte interventora.

Sin embargo, luego de evaluar el recurso de epígrafe y revisar los documentos sometidos, a la luz de los criterios de nuestra Regla 40, *supra*, rechazamos ejercer nuestra jurisdicción revisora e intervenir con el criterio del foro primario para variar el dictamen recurrido. Recalcamos que, nuestro Tribunal Supremo ha sido enfático en que, como foros revisores, no debemos intervenir con las actuaciones de los foros primarios,

en ausencia de que hayan actuado con prejuicio o parcialidad, o que hayan errado en la aplicación del derecho. Incluso, ha dispuesto que, en el caso de las actuaciones discrecionales, solo estaríamos en posición de intervenir para variar el dictamen, si el foro primario abusó de su discreción.

Así las cosas, a base de un análisis cuidadoso de la totalidad del expediente apelativo, no estamos en posición de concluir que la actuación recurrida fuese irrazonable, o contraria en derecho. Consecuentemente, tampoco podemos afirmar que dicha actuación fuese el resultado de abuso de discreción por parte del foro primario. Por tanto, procede denegar la expedición del auto discrecional solicitado.

**IV.**

Por los fundamentos antes expuestos, se **DENIEGA** el presente auto discrecional de *certiorari*.

Lo pronunció y manda el Tribunal y lo certifica la Secretaria del Tribunal de Apelaciones.

Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones